**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-6598

LAMONT MCKOY,

        Petitioner - Appellant,

v.

ERIK A. HOOKS,

        Respondent - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:16-hc-02262-FL)

Argued: October 28, 2022                                    Decided: December 13, 2022

Before WILKINSON and NIEMEYER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Senior Judge Traxler joined.

**ARGUED:** Jamie Theodore Lau, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellant. Kimberly Nicole Callahan, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Evan Glasner, Wrongful Convictions Clinic, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina; John P. Nowak, Amanda Pober, Mark Russell Sperling, PAUL HASTINGS LLP, New York, New York, for Appellant. Joshua H. Stein, Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

In May 1991, a North Carolina state court jury convicted Lamont McKoy of first-degree murder for the shooting of Myron Hailey. Over 25 years later, in October 2016, McKoy filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the district court, requesting that the court vacate his conviction. In his petition, McKoy alleged that the State violated his constitutional rights by failing to disclose evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and by failing to correct the false testimony of a key eyewitness in violation of *Napue v. Illinois*, 360 U.S. 264 (1959), and *Giglio v. United States*, 405 U.S. 150 (1972). Those claims, however, were procedurally barred based on the one-year statute of limitations and the exhaustion requirements that apply to federal habeas petitions filed by persons convicted in state court. *See* 28 U.S.C. §§ 2244(d)(1), 2254(b)(1)(A). But, based on some new evidence, McKoy contended that the court should consider the merits of his claims pursuant to the Supreme Court's decision in *Schlup v. Delo*, 513 U.S. 298 (1995) (authorizing abusive or successive habeas petitions to be heard on the merits after making a prescribed showing of actual innocence), because his new evidence establishes that he is actually innocent of Hailey's murder. Following a lengthy evidentiary hearing, the district court denied McKoy's petition under *Schlup*, concluding that, when considering all of the evidence, a reasonable juror could still have voted to convict McKoy of murder.

In considering McKoy's challenge to the district court's ruling, we are mindful of the Supreme Court's directive that "the *Schlup* standard is demanding and permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (cleaned up).

2

While we acknowledge that McKoy's new evidence of his actual innocence merits careful review, we conclude nonetheless that the totality of the evidence does not rise to the level of satisfying the exacting fact-intensive standard in *Schlup*, which is necessary for the actual-innocence gateway. Accordingly, we affirm the district court's order dismissing McKoy's § 2254 petition.

I

On the morning of January 26, 1990, Myron Hailey's body was found slumped over in the driver's seat of his car. The car was located down an embankment in Fayetteville, North Carolina, and there were two bullet holes in the car's rear end. Hailey had been struck by one of the two .357 caliber bullets that pierced the rear of his car, apparently while he was driving away from the shooter. Investigators concluded that the shooting happened elsewhere in Fayetteville — about two miles away — and that Hailey died while driving away due to blood loss from the gunshot wound. McKoy was charged with Hailey's murder, tried, and convicted.

At McKoy's trial, which began in April 1991, the State relied primarily on two categories of evidence. First, it provided testimony from an eyewitness, Bobby Lee "Strawberry" Williams, Jr., who testified that he saw McKoy fire multiple shots at the rear of Hailey's car in the Haymount Hill neighborhood of Fayetteville. Williams testified that he was with Hailey on the night of January 25, 1990, when the two men confronted McKoy for selling Hailey fake cocaine. Williams stated that after ensuring that McKoy exchanged real drugs for the fake cocaine, he walked away. Soon thereafter, however, he heard a

3

gunshot coming from the intersection of Bryan and Branson Streets, where he had left Hailey and McKoy, and he turned around and walked back towards the intersection. He then saw McKoy and two or three other individuals running down a path away from the intersection towards Davis Street, one block over. Williams followed, and when he arrived at Davis Street, he saw McKoy shooting at Hailey's car. A spark came from the car's rear and then the car began to swerve. The car was found approximately two miles away from that location with Hailey inside, dead.

Second, the State presented testimony from Officer Michael Ballard of the Fayetteville Police Department who testified regarding his involvement in the murder investigation. He testified to a conversation that he had with McKoy in March 1990, after McKoy had been stopped by other officers for an unrelated traffic violation. After coming to the scene of the traffic stop, Officer Ballard asked to speak with McKoy, and the two had a discussion in Ballard's car. Officer Ballard testified as follows regarding their exchange:

> I then stated the night you shot Myron Hailey, you did so because he ripped you off. McKoy replied with a smile on his face, I know it. I stated that Hailey got into his car and started driving away, and he shot him, bamb, bamb. McKoy replied, I know it. I then said you, Ant Lee, Cat, Charmain ran through the path, came out the corner of Davis and Arsenal [and] when Hailey turned down Davis, you shot again, and Hailey started swerving from side to side. McKoy replied, I know it.

Officer Ballard then stated that McKoy remarked, "I ain't saying anything," and when he asked McKoy if he was innocent of what the witnesses were saying, McKoy did not reply. As McKoy was leaving Officer Ballard's car, McKoy commented that the police did not

4

"even know what kind of bullet it was," and when Ballard replied that it was a .357, McKoy "immediately quit smiling" and exited the vehicle.

Following a four-day trial, the jury convicted McKoy of first-degree murder, and the court sentenced him to life in prison. McKoy appealed to the Supreme Court of North Carolina, arguing on direct appeal that the trial court committed reversible error by giving the jury an instruction on admissions, suggesting that there was "evidence which tend[ed] to show that the defendant has admitted the facts relating to the crime charged." *State v. McKoy*, 417 S.E.2d 244, 246 (N.C. 1992). The Supreme Court of North Carolina affirmed McKoy's conviction, finding that if the jury believed Officer Ballard's testimony that McKoy gave the repeated answers of "I know it," it reasonably could have found that McKoy had admitted shooting Hailey. *Id*.

In April 1998, McKoy filed a Motion for Appropriate Relief in a North Carolina Superior Court, asserting various grounds for relief. While the court dismissed four of McKoy's claims without a hearing, it ordered an evidentiary hearing on his claim of the ineffective assistance of appellate counsel, which focused on whether McKoy's counsel learned of new evidence that came to light after McKoy's conviction, pointing to William Talley as the perpetrator of Hailey's murder. At the hearing in September 2001, the court received and considered evidence of eyewitness statements discussing Talley's involvement in a similar shooting but ultimately dismissed McKoy's claim, finding that there was not enough similarity between the alleged Talley shooting incident and the evidence presented in the McKoy prosecution to help McKoy's case. The North Carolina

5

Court of Appeals and the Supreme Court of North Carolina both denied McKoy's petitions for a writ of certiorari.

In July 2013, McKoy filed a second Motion for Appropriate Relief in a North Carolina Superior Court raising claims similar to those made by McKoy in his present § 2254 petition, and in December 2014, the Superior Court denied McKoy's second Motion for Appropriate Relief on procedural grounds. McKoy appealed this decision to the North Carolina Court of Appeals, which denied review of his petition in October 2015.

Finally, on October 31, 2016, McKoy filed this habeas petition in the district court under 28 U.S.C. § 2254, ultimately relying on *Schlup* to justify the court's consideration of his defaulted claims. In his effort to demonstrate actual innocence, McKoy again presented evidence pointing to Talley as the actual perpetrator of Hailey's murder. The evidence included statements from multiple eyewitnesses — uncovered by a joint federal-state investigation into gang activity in Fayetteville — who described a shooting at the Grove View Terrace public-housing complex in Fayetteville, in which Talley fired multiple shots at the rear of a car as it drove away following a drug deal. Some of those eyewitnesses suggested that this was the same shooting that led to McKoy's conviction. McKoy also presented evidence that an emergency response team of the Fayetteville Police Department had been dispatched to the intersection of Bryan and Branson Streets on the night of January 25, 1990, in connection with an unrelated shooting, and had stayed at that location until after midnight. This evidence called into question Williams's testimony that the first shots were fired at that same intersection on the night of January 25, although the police

6

did not witness any shooting. McKoy also highlighted other inconsistencies and impracticalities with respect to the timeline provided by Williams when testifying.

Following a three-day evidentiary hearing before a magistrate judge, the judge concluded that McKoy had not made the requisite showing of actual innocence to allow his claims to proceed on the merits. In a thorough, 59-page memorandum, the magistrate judge provided a detailed review of the totality of the evidence. While the magistrate judge acknowledged holes and inconsistencies in the State's case, he found ultimately that a reasonable juror could still vote to convict McKoy based on McKoy's statements to Officer Ballard in which, it can be argued, McKoy admitted to shooting Hailey. Accordingly, the magistrate judge recommended that the district court dismiss McKoy's petition. The district court adopted the magistrate judge's memorandum and, by order dated March 30, 2020, dismissed McKoy's § 2254 habeas petition. This appeal followed.

After McKoy filed his § 2254 petition, the State released McKoy on parole — having served a sentence of some 26 years — and his parole is now set to expire in December 2022.

II

When a § 2254 petition is procedurally barred, as was McKoy's, the petitioner can still seek a writ of habeas corpus by passing through an "actual-innocence gateway." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *see also Schlup*, 513 U.S. 298. But to do so, the petitioner must present "new reliable evidence" and "demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a

7

reasonable doubt." *Teleguz v. Pearson*, 689 F.3d 322, 328–29 (4th Cir. 2012) (cleaned up). Thus, in considering such a petition, a court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial," *House*, 547 U.S. at 538 (cleaned up), and then make "a probabilistic determination about what reasonable, properly instructed jurors would do," *Schlup*, 513 U.S. at 329. If the court determines "that it is more likely than not that no reasonable juror would have convicted" the defendant, based on the totality of the evidence, then the defendant can pass through the actual-innocence gateway and have his procedurally defaulted claims heard on the merits. *Id*. at 327. The actual-innocence showing is "a procedural mechanism" to open the gate to having the petitioner's substantive claims considered, and any entitlement to habeas relief would ultimately depend on the merits of his procedurally defaulted claims. *Teleguz*, 689 F.3d at 327–28.

To argue that he made this gateway showing, McKoy points essentially to three factual matters. *First*, he argues that his March 1990 conversation with Officer Ballard was not a confession and that in that conversation he in no way implicated himself in Hailey's murder. *Second*, he argues that the accumulation of evidence — two police tips from January 1990 and evidence developed during the course of the joint federal-state task force's investigation of gang activity in Fayetteville and Talley, in particular, in 1995 — pointed to Talley as the actual murderer of Hailey. And *third*, he argues, relying on a wide range of evidence and arguments, that Williams, who testified as an eyewitness against McKoy at trial, was not credible, rendering his testimony unworthy.

8

As to the first contention about McKoy's confession, we note that this argument was already considered by both the jurors who convicted McKoy and the North Carolina Supreme Court on direct appeal, *see McKoy*, 417 S.E.2d at 246, and therefore such a determination of fact must "be presumed to be correct," with the burden on McKoy of rebutting the presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  His simple protestation, however, was not sufficient to rebut the presumption.  Moreover, Officer Ballard testified again to the conversation at the hearing on McKoy's § 2254 petition, giving rise to the magistrate judge's finding that Officer Ballard was credible.

As to the evidence implicating Talley as the murderer, we again note that the North Carolina Superior Court determined in 2001 that the evidence was insufficient to support McKoy's claim.  This evidence, however, was later buttressed by McKoy's receipt of additional evidence from the unrelated joint federal-state investigation into gang-related activity in Fayetteville, making this McKoy's most persuasive argument.  But, taking the evidence as a whole, it was nonetheless not conclusive and surely did not directly exclude McKoy as Hailey's shooter.  To be sure, McKoy presented evidence pointing to Talley's participation in a similar shooting, but the circumstances of Talley's shooting might also have been distinct from the circumstances of McKoy's shooting, suggesting two different incidents.  This was fully examined by the district court, and we cannot conclude that the court erred in holding that, in view of all the evidence taken as a whole, it is not "more likely than not that no reasonable juror would have convicted [McKoy]." *Schlup*, 513 U.S. at 327.

9

Finally, as to McKoy's challenge to Williams's credibility, that issue was appropriately resolved by the jury, apparently against McKoy. Moreover, Williams's testimony still stands that he witnessed McKoy shooting into the rear of Hailey's car.

At bottom, we cannot conclude that the district court erred in concluding that McKoy failed to carry his very demanding burden of showing that it is more likely than not that no reasonable juror would have convicted him in light of all of the evidence.

The district court's order dismissing McKoy's § 2254 petition is accordingly

AFFIRMED.